1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE DISTRICT OF ARIZONA**

8    Arturo A. Canez,                          )    No. CV-12-02232-PHX-PGR (SPL)
                                               )
9                        Petitioner,           )
                                               )    **REPORT AND RECOMMENDATION**
10   vs.                                       )
                                               )
11   Charles L. Ryan, et al.,                  )
                                               )
12                       Respondents.          )
                                               )
13   _____  )
                                               )
14

15       TO THE HONORABLE PAUL G. ROSENBLATT, SENIOR UNITED STATES DISTRICT JUDGE:

16           Petitioner Arturo Canez, who is confined in the Arizona State Prison Complex-

17   Lewis, Buckley Unit, in Buckeye, Arizona, has filed a *pro se* First Amended Petition for

18   Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 12).

19                                   **BACKGROUND**

20           On March 7, 1996, Petitioner was indicted by a grand jury in the Pinal County

21   Superior Court ("Superior Court"), Case No. CR 96-021235, of one count of first degree

22   felony murder (Count I), two counts of armed robbery (Counts II and III), and one count

23   of first degree burglary (Count IV). (Doc. 20-1, Exh. A.) Trial commenced on January

24   21, 1998, and on February 5, 1998, a jury returned guilty verdicts on all charges. (Doc.

25   20-1, Exh. B.)

26           Following sentencing hearings held on September 1, 1998 and October 2, 1998,

27   the Superior Court found the State had proved four aggravating circumstances beyond a

28   reasonable doubt: (1) Petitioner had been convicted of four prior serious offenses; (2) the

victim was at least seventy years old at the time of the crime; (3) the murder was committed in expectation of pecuniary gain; and (4) the offense was committed in an especially heinous, cruel, or depraved manner. (Doc. 20-1, Exh. D.) The Superior Court found Petitioner had failed to prove the statutory mitigating circumstance of significant mental impairment and that "the cumulative effect of all of the mitigation offered by the defendant ... [was] not sufficiently substantial to call for leniency." (Doc. 20-1 at 25, Exh. D.) On October 27, 1998, Petitioner was sentenced to death for the count of first degree murder, and a term of 28-years of imprisonment for each remaining count to run concurrent with one another, but consecutive to the death sentence. (Doc. 20-1, Exh. C and D.)

A Notice of Appeal was automatically filed in the Arizona Supreme Court following the Superior Court's imposition of the death penalty. (Doc. 20-1 at 26, Exh. D.) In his opening brief on direct appeal, Petitioner raised a total of 21 grounds, ten of which pertained to trial as follows:

> 1. The State's Systematic Exclusion of Hispanic Jurors Violated *Batson* and *Cruz*, Deprived Appellant of Equal Protection of the  Laws in Violation of the Fourteenth Amendment and Deprived Him  of a Fair and Impartial Jury in Violation of the Sixth Amendment  and Article 2 Section 24 of the Arizona Constitution…

> 2. Appellant was Denied his Right to a Fair and Impartial Jury Under the Sixth Amendment and Article 2 Section 24 of the Arizona  Constitution and his Rights to a Fair Trial and to Due Process of  Law Under Fourteenth Amendment and Article 2 Section 4 of the Arizona Constitution by Use of a Death qualified Jury . . .

> 3. Appellant was Deprived of a Fair and Impartial Jury and Due Process of Law in Violation of the Fifth, Sixth and Fourteenth  Amendments and Article 2 Sections 4 and 24 of the Arizona Constitution . . .

> 4. Appellant was Denied his State and Federal Constitutional Right to a Fair and Impartial Jury When the Court Limited his Voir Dire of the  Jury by Refusing the Use of a Defense Jury Questionnaire. . .

> 5. The Trial Court Erred in Denying Appellant's Motion for Directed Verdict and Deprived Appellant of his Right to Due Process of Law  Guaranteed by the Fifth and Fourteenth

Amendments and Article 2 Section 4 of the Arizona Constitution as There Was Insufficient Evidence to Support the Conviction…

6. The Pre-Trial and In-Court Identifications of Appellant by Brian Patterson Were the Product of Improper and Unduly Suggestive Identification Procedures Warranting Reversal of Appellant's  Under the Arizona and Federal Constitutions . . .

7. The Trial Court Committed Reversible Error in Admitting Appellant's Statements to Police . . .

8. Appellant's Constitutional Right to Confrontation was Violated and the Trial Court Abused its Discretion in Limiting Cross Examination of the Chief Witness Against Him . . .

9. The Trial Court's Error in Refusing to Exclude Gruesome and Inflammatory Photographs of the Victim and the Crime Scene  Violated Appellant's Constitutional Rights . . .

10. The Pinal County Attorney Violated ARS 13-2802 and ER3.4(b) by "Purchasing" Testimony From and Therefore Influencing Several of the State's Witnesses, in Violation of the Statute and Appellant's Right to Due Process Under the Fifth and Fourteenth Amendments  and Article 2 Section 4 of the Arizona Constitution and the Right to Confrontation of Witnesses Under the Sixth Amendment and Article  2 Section 24 of the Arizona Constitution . . .

11. The Reasonable Doubt Instruction Lowered the State's Burden of Proof, Violated the Rule in Winship and Deprived Appellant of his Right to Due Process of Law Under the Fourteenth Amendment and Article 2 Section 4 of the Arizona Constitution and the Right to Trial by Jury Under the Sixth Amendment and Article 2 Sections 23 and  24 of the Arizona Constitution . . .

(Doc. 20-1, Exh. F.) In a published decision issued on February 14, 2002, the Arizona Supreme Court reversed Petitioner's second conviction for armed robbery (Count III), and affirmed his remaining convictions and sentences. (Doc. 20-1, Exh. E); *State v. Canez*, 42 P.3d 654 (Ariz. 2002).

Following the decision, on June 24, 2002, the United States Supreme Court decided *Ring v. Arizona*, 536 U.S. 584 (2002) (*Ring II*), which held that Arizona's capital sentencing scheme violated the Sixth Amendment right to a jury trial. On remand of *Ring II*, the Arizona Supreme Court consolidated Petitioner's case with others similarly procedurally situated, in which the death penalty had been imposed but mandate had not

yet issued, to determine whether *Ring II* required reversal or vacatur of the death sentences. *State v. Ring*, 65 P.3d 915, 925 (Ariz. 2003). The Arizona Supreme Court concluded that judicial fact-finding in the capital sentencing process would constitute harmless error where it could be determined beyond a reasonable doubt that no reasonable jury would fail to find the aggravating circumstance, and directed that in separate opinions, it would consider individually the sentences of each defendant. *State v. Ring*, 65 P.3d at 945. Consequently, in *State v. Canez*, 65 P.3d 932, 934 (Ariz. 2003), the Arizona Supreme Court examined Petitioner's case to determine whether the *Ring II* error was harmless (Doc. 20-2, Exh. H), and on June 30, 2003, vacated Petitioner's death sentence and remanded "for resentencing and for a determination of whether Canez has mental retardation and is therefore ineligible for the death penalty." *State v. Canez*, 65 P.3d at 938. The State filed a Petition for Writ of Certiorari (Doc. 20-2, Exh. I), which was denied by the United States Supreme Court on January 12, 2004 (Doc. 20-2, Exh. J); *Arizona v. Canez*, 540 U.S. 1141 (2004).

On remand, the State withdrew its request for imposition of the death penalty, and on January 5, 2007, the Superior Court resentenced Petitioner to term of imprisonment of natural life without the possibility of parole. (Doc. 20-2, Exh. K.) Petitioner sought review by the Arizona Court of Appeals on January 9, 2007. (Doc. 20-2, Exh. L; Doc. 21-4 at 199, Exh. LL.) In his opening brief, Petitioner raised one issue, namely, whether "[t]he trial court failed to give adequate weight to [his] mental capacity as a strong mitigating factor." (Doc. 20-2 at 131, Exh. L.) In a memorandum decision filed on September 10, 2007, the Arizona Court of Appeals affirmed the Superior Court's decision. (Doc. 20-2, Exh. M); *State v. Canez*, 2007 WL 5595966 (Ariz. Ct. App. 2007) No Motion for Reconsideration or Petition for Review was filed, and the mandate of the Arizona Court of Appeals issued on November 29, 2007. (Doc. 21-4, Exh. QQ.)

On October 1, 2007, Petitioner timely filed a Notice of Post-Conviction Relief in the Superior Court, and was appointed counsel. (Doc. 21-4 at 223, Exh. PP; Doc. 20-2 at 157, Exh. P.) On January 6, 2009, counsel filed a Notice pursuant to Rule 32.4(c) of the

Arizona Rules of Criminal Procedure, stating that she could find no colorable claims to present. (Doc. 21-4, Exh. LL.) However, on or about July 1, 2009, counsel filed a Supplemental Petition for Post-Conviction Relief. (Doc. 1-2 at 42-63 and Doc. 1-3 at 1-3, Exh. C; Doc. 21-4 at 203, Exh. MM.)[1] The supplement set forth two claims based on newly discovered evidence: (1) "Petitioner's former wife, Carmen Martinez, had submitted an affidavit claiming that she had been threatened and intimidated by the State's agent, Detective Merchant;" and (2) "Petitioner had suffered a hand injury which would have negated the evidence that he injured his hand in the incident and that he was receiving workmen's compensation for the injury." (Doc. 20-2 at 157, Exh. P.) Subsequently, counsel withdrew as attorney of record, and Petitioner was appointed new counsel.

On February 1, 2010, new counsel filed a notice stating that he could find no colorable claims to present. (Doc. 21-4, Exh. MM.) On September 28, 2010, however, counsel filed an Additional Supplemental Petition. (Doc. 20-2 at 1257, Exh. P). On or about November 24, 2010, counsel withdrew as attorney of record (Doc. 20-2, Exh. V), and on January 11, 2011, the Superior Court appointed Petitioner advisory counsel to assist him to proceed *pro se* (Doc. 20-2, Exh. O). Petitioner filed a *pro se* Motion to Amend Prior Rule 32 Petition on or about January 24, 2011. (Doc. 1-3 at 6.)

In considering the pleadings collectively, the Superior Court construed Petitioner as having raised the following claims in his post-conviction relief proceeding:

> 1. The introduction of evidence obtained by an anacrastic (sic) and illegal arrest.

> 2. The introduction of said evidence, that was obtained by an unlawful and unconstitutional search and seizure.

> 3. The introduction of statements at trial obtained in the absence of counsel.

---

[1]      Although the original petition is superseded in its entirety by the amended petition, *see infra* footnote 7, the Court expands the record on review *sua sponte* to include those state records which were attached to Petitioner's original petition as exhibits, but were not later resubmitted. (*See* Doc. 1-2 at 42-63 and Doc. 1-3 at 1-3, Exh. C; Doc. 1-3 at 4-24, Exh. D.)

4. Ineffectiveness of counsel on a level of not just counsel's performance, but that results in prejudice so egregious it produces and constitutes error irreversible that it "infects" the entire case.

5. His attorneys failed to present evidence that would prove the defendant's innocence. (The industrial claim evidence).

6. Misconduct by Detective Merchant in relation to the Petitioner's wife.

(Doc. 20-2 at 157, Exh. P; Doc. 1-3 at 7-8.) In a Notice dated April 29, 2011, the Superior Court denied post-conviction relief, finding:

As to the first three claims, these were extensively reviewed and decided by the Arizona Supreme Court in the Petitioner's first appeal and are, therefore, precluded.

As to the claim that the industrial commission records are newly discovered evidence, it is clear from the documents that they were addressed to the Petitioner who was aware of these facts prior to the trial of this matter. In fact, trial counsel raised the prior injury and argued the same at trial. This claim is without merit.

As to the claim of misconduct by Detective Merchant, the Petitioner's ex-wife states in her affidavit that the alleged statement: "Tell me your husband wasn't home on these days Friday and Saturday and I won't take you in we can forget about this" [sic] did not keep her from testifying and that it was the decision of trial counsel not to put her on the witness stand because of her prior conviction for witness tampering.

Detective Merchant arrested the Petitioner's wife for witness tampering pursuant to a warrant from the Casa Grande Justice Court. The wife plead guilty to witness tampering in Cause No. 96021347. A review of the pre-sentence report in that matter and the letter furnished to the court at the time of sentencing shows that she made the same claims then as now except for the alleged statement that he would forget the incident if she testified that her husband was not at home. Her affidavit states that she was willing to testify and discussed the matter with her husband's attorney who decided not to call her because of the conviction.

It is apparent that these facts were known to counsel for the Petitioner prior to trial and that the decision to not call her as a witness was a reasonable trial decision by counsel. This is not a matter of newly discovered evidence and this claim is without merit.

As to the claim of overall ineffectiveness of counsel, the Court has carefully reviewed the record and transcripts in this matter and finds that the performance of the two attorneys

1

2

3

4

        assigned to the Petitioner in this matter did not fall below acceptable levels and that they made appropriate trial decisions in regard to the presentation of evidence and examination and cross-examination of the witnesses herein. The Court further finds that these issues were considered in the Petitioner's first appeal and decided by the Supreme Court and were precluded.

5

(Doc 20-2 at 158, Exh. P.)

6

      Following the Superior Court's denial, Petitioner filed a "Motion in Three Parts in

7

Propria Persona" in which he requested:

8

9

10

11

12

        (1) that the court order the Department of Corrections to allow correspondence between Petitioner and inmate, Timothy L. Donahue; (2) that the Court Clerk be ordered to furnish the Petitioner with a copy of the Rules of Criminal Procedure and that the Petitioner be allowed to buy and possess a typewriter or recording device; and (3) that all State levels of appeal be exhausted so that he may proceed to the federal level.

13

14

15

(Doc. 28-1; Doc. 20-2 at 189, Exh. V.)[2]  In an order dated July 21, 2011, the Superior Court denied the motion, finding that no proceedings were pending before it and Petitioner's request for post-conviction relief had been denied on April 29, 2011. (*Id.*)

16

17

18

19

20

21

      On September 20, 2011, Petitioner filed a "Petition for Review/Motion to Show Cause for Lateness" and a "Motion to Excuse Defendant" in the Superior Court. (Doc. 20-2, Exh. Q; Doc. 20-2 at 169; Doc. 20-2 at 189, Exh. V.) Finding that Petitioner had improperly filed the pleadings in Superior Court, in an order dated October 24, 2011, the clerk of court was directed to transmit them to the Arizona Court of Appeals. (Doc. 20-2, Exh. Q.)[3]

22

23

24

25

26

---

[2]    Found at http://apps.supremecourt.az.gov/publicaccess/minutes.aspx (last visited January 23, 2014). *See Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), overruled on other grounds by *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991) (a court may take judicial notice of "matters of public record outside the pleadings"); *Wyatt v. Terhune*, 315 F.3d 1108, 1114 & n. 5 (9th Cir. 2003) (public records may be judicially noticed to show that a judicial proceeding occurred or that a document was filed in another court case); *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001).

27

28

[3]    Following the Arizona Court of Appeal's dismissal of the Petition for Review on November 14, 2011, *see infra*, the Superior Court found the "Motion to Excuse Defendant" moot. (Doc. 20-2, Exh. S.)

On October 27, 2011, the "Petition for Review/Motion to Show Cause for Lateness" was filed in the Arizona Court of Appeals. (Doc. 28-2.)[4] On November 7, 2011, the Arizona Court of Appeals dismissed the appeal, finding that "the petition for review was not timely filed within the thirty (30) day time limit in accordance with Ariz. R. Crim. P. 32.9."[5] (Doc. 20-2 at 162, Exh. R.) On November 17, 2011, Petitioner filed a motion entitled "Transmittal of Record and Preservation of Record to Supreme Court [no ruling necessary]." (Doc. 28-2.) On November 25, 2011, on the court's own motion, Petitioner was granted time to petition review by the Arizona Supreme Court pursuant to Rule 31.19(c) of the Arizona Rules of Criminal Procedure.[6] On December 9, 2011, Petitioner filed a Petition for Review in the Arizona Court of Appeals (Doc. 20-2, Exh. T), which was transmitted to the Arizona Supreme Court on January 6, 2012. (Doc. 28-2.) On February 2, 2012, the Arizona Supreme Court summarily denied the petition. (Doc. 20-2, Exh. U.) Petitioner did not seek review by the United States Supreme Court.

Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) on October 18, 2012, and the instant First Amended Petition (Doc. 12) on February 25, 2013.[7] Respondents filed a Limited Answer (Doc. 20, 21), to which

---

[4]      Found at   http://www.appeals2.az.gov/ODSPlus/caseInfolast.cfm?caseID=122671   (last visited January 23, 2014).

[5]      *See* Ariz. R. Crim. P. 32.9 ("Within thirty days after the final decision of the trial court on the petition for post-conviction relief…any party aggrieved may petition the appropriate appellate court for review of the actions of the trial court").

[6]      *See* Ariz. R. Crim. P. 31.19(a) ("Within 30 days after the Court of Appeals issues its decision, any party may file a petition for review with the clerk of the Supreme Court"); Ariz. R. Crim. P. 31.19(c) ("Any petition for review presented for filing that does not substantially comply with this rule may, in the discretion of the clerk of the Supreme Court, be returned to the petitioner with written instructions to the petitioner to file a proper petition within 30 days from the date on which the written instructions are sent to the petitioner").

[7]      As the Court instructed in its order dated March 7, 2013 (Doc. 17), an amended petition supersedes the original petition. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990). After amendment, the original pleading is treated as nonexistent, *Ferdik*, 963 F.2d at 1262, and grounds for relief alleged in an original petition which are not alleged in an amended petition are waived, *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, Petitioner's amended petition (Doc. 12) superseded the October 2012 petition (Doc. 1).

Petitioner filed a Traverse (Doc. 24, 25, 26). The Court afforded Petitioner an opportunity to address whether his original federal habeas petition was time-barred,[8] and a Supplemental Traverse followed. (Doc. 31.)

## DISCUSSION

In his First Amended Petition for Writ of Habeas Corpus (Doc. 12), Petitioner raises eleven grounds for relief:

*Ground One*: Batson Violation. Jury Selection was unconstitutionally tainted when the prosecutor systematically excluded qualified Hispanic jurors on the basis of race.  This violated Petitioner's Right to Equal Protection of the Laws, and Right to Jury Trial, as guaranteed by Amendments 6 and 14 to the U.S. Constitution.  *See Batson v. Kentucky*, 476 U.S. 79 (1986).

*Ground Two*:  Petitioner was denied his Right to a Fair and Impartial Jury, rights to a Fair Trial, and to Due Process of Law, as guaranteed by Amendments 6, 5, and 14 to the U.S. Constitution by use of a Death Qualified Jury.

*Ground Three*:  Outside Influences on Jury.  Outside influences upon a jury raise a presumption of prejudice that imposes a heavy burden on the state to overcome by showing that those influences were harmless to the Petitioner.  This violated Petitioner's Right to Jury Trial, Right to a Fair Trial, and to Due Process of Law, as guaranteed by Amendments 6, 5, and 14 to the U.S. Constitution. *See Remmer v. U.S.*, 347 U.S. 227 (1954).

*Ground Four*: Voir Dire: Bias Concealed. Potential Juror Bias was not exposed because of unconstitutional limits by the court on voir dire. This violated Petitioner's Right to Jury Trial, and Right to a Fair Trial, as guaranteed by Amendments 6, 5, and 14 to the U.S. Constitution. *See Turner v. Murray*, 476 U.S. 28 (1986).

*Ground Five*: Evidence Insufficient. Petitioner's conviction was obtained as the result of evidence that is insufficient to persuade a properly instructed, reasonable jury of his guilt beyond a reasonable doubt.  This violated Petitioner's Right to Due Process of Law, as guaranteed by Amendments 5, and 14 to the U.S. Constitution. *See Jackson v. Virginia*, 443 U.S. 307 (1979).

*Ground Six*:  Identification Suggestive. Petitioner was convicted on the basis of a pre-trial and in-court identification

---

[8]    *See Day v. McDonough*, 547 U.S. 198, 202 (2006) (holding district court may raise issue of the timeliness of a state prisoner's habeas petition *sua sponte*); *Wood v. Milyard*, __U.S.__, 132 S.Ct. 1826 (2012) (same).

9

that was unconstitutionally suggestive. This violated Petitioner's Right to Due Process of Law, as guaranteed by Amendments 5, and 14 to the U.S. Constitution. *See Neil v. Biggers*, 409 U.S. 188 (1972); *see also Manson v. Brathwaite*, 432 U.S. 98 (1977).

*Ground Seven*: Miranda Violation. Petitioner's statements were obtained without a valid waiver of his right to counsel. This violated Petitioner's Right to Counsel, and to Due Process of Law, as guaranteed by Amendments 6, 5, and 14 to the U.S. Constitution. *See Miranda v. Arizona*, 384 U.S. 436 (1966).

*Ground Eight*: Cross Examination Restricted. The Court unfairly restricted the defense's cross-examination of a key prosecution witness. This violated Petitioner's Right to a Fair Trial, as guaranteed by Amendment 5 to the U.S. Constitution. *See Davis v. Alaska*, 415 U.S. 308 (1974).

*Ground Nine*: Prosecutorial Misconduct. Petitioner's conviction was obtained as a result of prosecutorial misconduct. This violated Petitioner's Right to a Fair Trial, and Due Process of Law, as guaranteed by Amendments 5, and 14 to the U.S. Constitution. *See Darden v. Wain Wright*, 477 U.S. 168 (1986).

*Ground Ten*: Reasonable Doubt: Elements of Charge. Petitioner's conviction was based on less than proof beyond a reasonable doubt of each and every element of the charged crime. This violated Petitioner's Right to Due Process of Law, as guaranteed by Amendments 5 and 14 to the U.S. Constitution. *See In Re Winship*, 397 U.S. 358 (1970).

*Ground Eleven*: IAC: *Cronic* Standard. Petitioner's counsel so utterly failed to defend against the charges that the trial was the functional equivalent of a guilty plea, rendering counsel's representation presumptively inadequate. This violated Petitioner's Right to Counsel, and to Due Process of Law, as guaranteed by Amendments 6, 5, and 14 to the U.S. Constitution. *See U.S. v. Cronic*, 466 U.S. 648 (1987); *see also Strickland v. Washington*, 466 U.S. 668 (1984).

In their answer, Respondents contend that Grounds Two, Three (in part), Six, and Eleven (in part) of Petitioner's amended habeas petition are time-barred. Respondents further argue that Petitioner did not exhaust his state court remedies for his claims in Grounds Three (in part) and Eleven (in part), and those claims are procedurally barred. Lastly, Respondents argue Petitioner's remaining claims fail on their merits.

10

1    **I.     Timeliness of Federal Habeas Proceedings**

2          **A.     Legal Standard**

3          The writ of habeas corpus affords relief to persons in custody pursuant to the

4    judgment of a State court in violation of the Constitution, laws, or treaties of the United

5    States. 28 U.S.C. §§ 2241(c)(3), 2254(a). Such petitions are governed by the

6    Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[9]  28 U.S.C. § 2244.

7    The AEDPA imposes a statute of limitations on federal petitions for writ of habeas

8    corpus filed by state prisoners. *See* 28 U.S.C. § 2244. The statute provides:

9               A 1-year period of limitation shall apply to an application for
10              a writ of habeas corpus by a person in custody pursuant to the
                judgment of a State court. The limitation period shall run
11              from the latest of–

12              (A) the date on which the judgment became final by the
                conclusion of direct review or the expiration of the time for
13              seeking such review;

14              (B) the date on which the impediment to filing an application
                created by State action in violation of the Constitution or laws
15              of the United States is removed, if the applicant was
                prevented from filing by such State action;

16              (C) the date on which the constitutional right asserted was
17              initially recognized by the Supreme Court, if the right has
                been newly recognized by the Supreme Court and made
18              retroactively applicable to cases on collateral review; or

19              (D) the date on which the factual predicate of the claim or
                claims presented could have been discovered through the
20              exercise of due diligence.

21   28 U.S.C. § 2244(d)(1). "[W]ith respect to a state prisoner who does not seek review in a

22   State's highest court, the judgment becomes 'final' under § 2244(d)(1)(A) when the time

23   for seeking such review expires." *See Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 656

24   (2012). Where a petitioner seeks direct review from the highest state court, "the period of

25   'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner

26   can file a petition for a writ of certiorari from the United States Supreme Court, whether

27

28   _____
     [9]     The AEDPA applies to federal habeas petitions filed after its effective date, April
     24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

or not the petitioner actually files such a petition." *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999); *see also Zepeda v. Walker*, 581 F.3d 1013, 1016 (9th Cir. 2009).

The one-year filing deadline is statutorily tolled during the time in "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). *See also Lott v. Mueller*, 304 F.3d 918, 921 (9th Cir. 2002). In Arizona, post-conviction review is pending once a notice of post-conviction relief is filed, even though the petition is not filed until later. *Isley v. Arizona Department of Corrections*, 383 F.3d 1054, 1056 (9th Cir. 2004). *See also* Ariz. R. Crim. P. 32.4(a) ("A proceeding is commenced by timely filing a notice of post-conviction relief with the court in which the conviction occurred."). Under 28 U.S.C. § 2244(d)(2), an application is "pending" during the "time between a lower state court's decision and the filing of a notice of appeal to a higher state court." *Carey v. Saffold*, 536 U.S. 214 (2002); *Biggs v. Duncan*, 339 F.3d 1045, 1048 (9th Cir. 2003). However, the time between a first and second application for post-conviction relief is generally not tolled because no application is "pending" during that period. *See Biggs*, 339 F.3d at 1048; *see also King v. Roe*, 340 F.3d 821 (9th Cir. 2003) (finding petitioner was "not entitled to tolling during the interval between the completion of one round of state collateral review and the commencement of a second round of review"). Further, unlike finality under 28 U.S.C. § 2244(d)(1), statutory tolling under 28 U.S.C. § 2244(d)(2) does not apply to the period to seek certiorari from the United States Supreme Court. *See White v. Klitzkie*, 281 F.3d 920, 924 (9th Cir. 2002).

In certain limited circumstances, the one-year filing deadline may be equitably tolled. *Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 2560 (2010). *See also Calderon v. United States Dist. Ct. (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997) (recognizing that AEDPA's limitations period may be equitably tolled because it is a statute of limitations, not a jurisdictional bar), overruled in part on other grounds by *Calderon v. United States Dist. Ct. (Kelly)*, 163 F.3d 530, 540 (9th Cir. 1998). A petitioner is entitled to equitable tolling if he can demonstrate that "'(1) that he has been pursuing his rights diligently and

12

(2) that some extraordinary circumstances stood in his way'" to prevent him from timely filing a federal habeas petition. *Holland*, 130 S.Ct. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Roberts v. Marshall*, 627 F.3d 768, 772 (9th Cir. 2010) (the petitioner must demonstrate "both that there were 'extraordinary circumstances,' and that the 'extraordinary circumstances were the cause of his untimeliness'") (quoting *Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007)); *Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006) ("Equitable tolling is applicable only if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time") (internal quotation marks and citations omitted). "[T]he threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (quoting *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002)).

Lastly, "an actual-innocence gateway claim" may serve as an exception to AEDPA's limitations period. *McQuiggin v. Perkins*, __ U.S. __, 133 S.Ct. 1924, 1926-1927 (2013); *see also Stewart v. Cate*, 734 F.3d 995, 999 (9th Cir. 2013) ("[a]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... [or] expiration of the statute of limitations") (brackets in original). "To present otherwise time-barred claims in federal court, a petitioner must produce proof of his innocence that is sufficient to convince a federal court that a failure to entertain his claim would constitute a fundamental miscarriage of justice." *Larsen v. Soto*, ___ F.3d ___, 2013 WL 6084250, at *10 (9th Cir. 2013) (citing *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011) (en banc)).  A petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Larson*, 2013 WL 6084250, at *10 (citing *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). *See also McQuiggin*, 133 S.Ct. at 1927 (explaining the significance of an "[u]nexplained delay in presenting new evidence"). Thereby, in order to qualify for this exception and "pass through the *Schlup* gateway, a

13

1    'petitioner must show that it is more likely than not that no reasonable juror would have

2    convicted him in the light of the new evidence.'" *Lee*, 653 F.3d at 938 (quoting *Schlup*,

3    513 U.S. at 327). However, "[t]his is a high threshold that is rarely met." *Lee*, 653 F.3d at

4    945; *see also McQuiggin*, 133 S. Ct. at 1928 ("tenable actual-innocence gateway pleas

5    are rare").

6        **B.    Application**

7            **1.    Commencement of Limitations Period**

8            Petitioner was originally sentenced on October 27, 1998. Following several rounds

9    of direct appeal, on September 10, 2007, the Arizona Court of Appeals affirmed his

10   convictions and sentences. Petitioner did not seek review by the Arizona Supreme Court

11   and therefore, Petitioner's judgment became final on October 10, 2007 within the

12   meaning of 28 U.S.C. § 2244(d)(1)(A). *See* Ariz. R. Crim. P. 31.19(a); *Gonzalez*, 132

13   S.Ct. at 656. Absent any tolling, the one-year limitations period would have commenced

14   on October 11, 2007.

15           **2.    Statutory Tolling of Limitations Period**

16           The limitations period was statutorily tolled pursuant to 28 U.S.C. § 2244(d)(2),

17   when Petitioner timely filed a Notice of Post-Conviction Relief on October 1, 2007. *See*

18   Ariz. R. Crim. P. 32.4(a). That properly filed application remained "pending" until the

19   Superior Court's subsequent denial of the post-conviction relief proceedings on April 29,

20   2011. *See* 28 U.S.C. § 2244(d)(2). Because *no timely* petition for review was filed in the

21   Arizona Court of Appeals, the period of statutory tolling concluded with the Superior

22   Court's denial.

23           Petitioner argues in his reply that his post-conviction relief proceedings remained

24   pending until mandate was issued by the Arizona Supreme Court, tolling the limitations

25   period through June 19, 2013. (Doc. 31 at 3; Doc. 28-2 at 2.) "The time that an

26   application for state postconviction review is 'pending' includes the period between (1) a

27   lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal,

28   *provided that* the filing of the notice of appeal is timely under state law." *See Evans v.*

*Chavis*, 546 U.S. 189, 191 (2006) (emphasis in original) (citing *Carey*, 536 U.S at 225). Thus, "[t]he time between the denial of a petition in a lower [state] court and the filing of [an appeal] in the next higher state court does not toll the statute of limitations pursuant to 28 U.S.C. § 2244(d)(2) if the [appeal] [wa]s not timely filed." *Stewart*, 734 F.3d at 999 (citing *Carey*, 536 U.S at 225). Here, the Arizona Court of Appeals expressly dismissed the appeal as untimely pursuant to Rule 32.9 of the Arizona Rules of Criminal Procedure, and therefore, no application for post-conviction review was "pending" following the denial by the Superior Court. *See Evans*, 546 U.S. at 191. Consequently, "none of the time before or during consideration of that petition [for review] is statutorily tolled." *Bonner v. Carey*, 425 F.3d 1145, 1149 (9th Cir. 2005), amended on other grounds by 439 F.3d 993 (9th Cir. 2006). *See also Pace*, 544 U.S. at 414 (quoting *Carey*, 536 U.S. at 226) (when it "is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)").

Petitioner contends that, at minimum, under *Griffith v. Kentucky,* 479 U.S. 314 (1987), his petition remained pending until the time to appeal the April 2011 denial had elapsed. (Doc. 31 at 1.) However, *Griffith* concerned the "finality" of a judgment on direct appeal, not the period in which a collateral application remains "pending" under 28 U.S.C. § 2244(d)(2). *See id.* at 321 n. 6 ("[b]y "final," [the Supreme Court] mean[t] a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied").

As a result, the limitations period commenced on April 30, 2011, and continued to run uninterrupted for one year until April 29, 2012. Petitioner did not file his federal habeas petition until October 18, 2012, approximately six months after the limitations period expired.

### 3.    Equitable Tolling of Limitations Period

Petitioner alternatively argues that he is entitled to equitable tolling of the limitations period. He contends that tolling is warranted because: (1) he did not "timely

1    receive notice of the state trial court's April 29, 2011 decision order denying his P.C.R.

2    claims," and the state courts improperly handled his request to excuse his late-filed

3    appeal; (2) "A.D.O.C. prison authorities failed to provide him with current legal

4    materials," engaged in "unreasonable 'obstructions,'" and denied him library privileges

5    "in spite of his pending deadlines;" and (3) he "suffers from severe mental retardation"

6    which made "it virtually impossible to file his state court petition for review in the court

7    of appeals timely." (Doc. 31 at 2, 4.)

8          Petitioner first points to errors and delays in his state court proceedings, which he

9    appears to argue obscured the deadline for filing his federal habeas petition. However,

10   Petitioner's "confusion about whether [his] state filing would be timely" does not justify

11   his delay in filing a federal habeas petition. *See Pace*, 544 U.S. at 416. If diligent, upon

12   becoming belatedly aware of the denial of his post-conviction relief, or following the

13   denial of his petition for review, "he could have prepared a basic form habeas petition

14   and filed it to satisfy the AEDPA deadline." *Waldron-Ramsey v. Pacholke*, 556 F.3d

15   1008, 1014 (9th Cir. 2009). *See also Pace,* 544 U.S. at 416 (citing *Rhines v. Weber*, 544

16   U.S. 269, 278 (2005)) ("A prisoner seeking state postconviction relief might avoid this

17   predicament… by filing a 'protective' petition in federal court and asking the federal

18   court to stay and abey the federal habeas proceedings until state remedies are

19   exhausted"). Waiting "in the hopes that any ambiguities would ultimately be resolved in

20   his favor, is the kind of 'oversight, miscalculation or negligence' for which equitable

21   tolling is not appropriate." *Waldron-Ramsey*, 556 F.3d at 1013. Nor is any alleged

22   ignorance of the statute of limitations or "lack of legal sophistication is not, by itself, an

23   extraordinary circumstance warranting equitable tolling." *Rasberry v. Garcia*, 448 F.3d

24   1150, 1154 (9th Cir. 2006). *See also Robinson v. Kramer*, 588 F.3d 1212, 1216 (9th Cir.

25   2009) (citing *Felder v. Johnson*, 204 F.3d 168 (5th Cir. 2000)); *see also Fisher v.*

26   *Johnson*, 174 F.3d 710, 714 (5th Cir. 2000) ("[I]gnorance of the law, even for an

27   incarcerated *pro se* petitioner, generally does not excuse prompt filing.").

28         Moreover, absent an affirmative misstatement of law by a court, delays in court

16

proceedings do not rise to the level of an extraordinary circumstance. *See, e.g., Ford v. Pliler*, 590 F.3d 782, 788–89 (9th Cir. 2009) (*citing Plier v. Ford*, 542 U.S. 225 (2004)) (finding that equitable tolling does not apply when courts do not warn *pro se* litigants about deadlines, unless court affirmatively misleads parties). *See also Ortiz v. Stewart*, 149 F.3d 923, 939, 941 (9th Cir. 1998) ("federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings."). Petitioner has simply not shown that the state courts prevented him "from preparing and filing a habeas petition at any time." *Shannon v. Newland*, 410 F.3d 1083, 1090 (9th Cir. 2005).

Petitioner next argues that his lack of legal materials and limited access to the prison law library merits equitable tolling of the deadline. (See Doc. 31 at 2.) True, in certain circumstances, a lack of access to legal resources may be an extraordinary circumstance warranting equitable tolling. *See, e.g., Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (finding that unavailability of a copy of the AEDPA in a prison law library could be grounds for equitable tolling). However here, Petitioner has not pointed to any specific materials to which he did not have access. *Cf. Roy v. Lampert*, 465 F.3d 964, 974 (9th Cir. 2006) (finding that lack of access to AEDPA materials and Oregon law books may be an extraordinary circumstance); *Mendoza v. Carey*, 449 F.3d 1065 (9th Cir. 2006) (finding that lack of access to Spanish language legal materials or assistance could entitle habeas petitioner to equitable tolling). Rather, his complaints are generalized, and he does not show how his lack of legal resources prevented him from filing a federal habeas petition while the statute of limitations was running. Instead, the fact that Petitioner filed a lengthy state court petition during the limitations period, indicates that he had access to legal materials. (*See* Doc. 20-2, Exh. T.) Similarly, the "Motion in Three Parts in Propria Persona" is indicative of Petitioner's access to the rules for filing a federal habeas petition. (*See* Doc. 28-1 (requesting that "that all State levels of appeal be exhausted so that he may proceed to the federal level.").) Therefore, Petitioner has not shown that despite his own diligence, "the hardship caused by lack of access to his materials was an extraordinary circumstance"

1    that resulted in the untimeliness of his petition. *Waldron-Ramsey*, 556 F.3d at 1013.

2         Lastly, Petitioner argues that his mental incompetence was an extraordinary
3    circumstance beyond his control that caused the untimeliness of his appeal in post-
4    conviction relief proceedings. (Doc. 31 at 2.) In doing so, Petitioner cites to the state
5    court record, in which his mental health was at issue as a mitigating factor at sentencing.
6    (Doc. 31 at 4.). Mental illness or incompetence may be an extraordinary circumstance
7    warranting equitable tolling when it prevents a petitioner from timely filing his or her
8    habeas petition. *Laws v. Lamarque*, 351 F.3d 919, 926 (9th Cir. 2003) (where "a habeas
9    petitioner's mental incompetence in fact caused him to fail to meet the AEDPA filing
10   deadline, his delay was caused by an extraordinary circumstance beyond [his] control.").
11   Despite the state court record concerning Petitioner's mental health,[10] Petitioner has not
12   offered any set of facts in this case to establish a connection between his mental
13   impairment and his ability *to file a timely federal habeas petition*. *See Bryant v. Schriro*,
14   499 F.3d 1056, 1061 (9th Cir. 2007).

15        During the running of the limitations period, Petitioner managed to file numerous
16   pleadings in state court. His ability to litigate during the limitations period is evidence
17   that Petitioner's mental health did not prevent him from filing a habeas petition. *See*
18   *Roberts*, 627 F.3d at 773; *Gaston v. Palmer*, 417 F.3d 1030, 1035 (9th Cir. 2005)
19   ("Because [petitioner] was capable of preparing and filing state court petitions [during the
20   limitations period], it appears that he was capable of preparing and filing a [federal]
21   petition during the time in between those dates"), modified on other grounds, 447 F.3d
22   1165 (9th Cir. 2006); *see also Laws*, 351 F.3d at 923 ("Of course, a petitioner's statement
23   [of mental illness], even if sworn, need not convince a court that equitable tolling is

---

[10]      At the time of his initial sentencing, "Cañez point[ed] to evidence that he was
mentally retarded, was taking medication for seizures, suffered a depressive disorder, had
little education, was illiterate, exhibited symptoms of brain damage, was probably a drug
addict, and was intoxicated at the time of the offense." *State v. Cañez*, 42 P.3d 564, 593
(Ariz. 2002). "The court found that Cañez had a personality disorder and low average
intelligence or borderline mental retardation. Nevertheless, the court found that Cañez
possessed 'sufficient intelligence to make reasonable judgments regarding his conduct.'
Neither his personality disorder nor his intelligence were judged a 'sufficiently mitigating
factor to call for leniency.'" *Id.* at 595.

18

justified should countervailing evidence be introduced.").[11] In approximately June of 2011, Petitioner filed a "Motion in Three Parts in Propria Persona" (Doc. 20-2 at 189; Doc. 28-1), and in September 2011, he filed a motion for extension of time to file a petition for review and a petition for review (Doc. 20-2, Exh. Q; Doc. 20-2 at 189, Exh. V). In fact, Petitioner argues in his reply that "upon learning of the state trial court's dismissal of his P.C.R. claims, [Petitioner] immediately and diligently filed a "Petition for Review/Motion to Show Cause for Lateness," and a "Motion to Excuse Defendant," in propria-persona, in the state trial court on September 20, 2011." (Doc. 31 at 2.)  In November 2011, Petitioner moved for transmittal and preservation of record, and in December 2011, petitioned for review. Thereafter, Petitioner filed several motions in the Arizona Supreme Court, including a motion for appointment of counsel, a motion for clarification, and a motion to bypass the Supreme Court. (Doc. 20-2 at 186.) These filings indicate that Petitioner's mental condition did not preclude him from litigating during the limitations period.

For this reason, an evidentiary hearing is not necessary to determine if equitable tolling is warranted on this basis. *See Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006) (quoting *Laws*, 351 F.3d at 919) (a habeas petitioner should "receive an evidentiary hearing when he 'makes a good faith allegation that would, if true, entitle him to equitable tolling'").  Here, there is a well-developed record of Petitioner's actions during the limitations period. *See Roberts*, 627 F.3d at 773 (an evidentiary hearing is not required where "the record is amply developed, and where it indicates that the petitioner's mental incompetence was not so severe as to cause the untimely filing of his habeas petition[.]"). Therefore, the Court concludes that Petitioner's mental impairment does not warrant equitable tolling.

### 4.    Exception to Limitations Period

Lastly, in his reply, Petitioner argues that because he has a claim of actual

---

[11]    *Laws* is thus distinguishable from this case because the petitioner in *Laws* did not file pleadings while the limitations period was running, nor was there any other evidence concerning petitioner's mental competency during that period. *See* 351 F.3d at 924.

innocence, he may pass through the "gateway" and have his time-barred claims heard on the merits. (Doc. 31 at 4.) In arguing that he has a claim of actual innocence, Petitioner refers to the fifth ground listed in his amended petition. (*See* Doc. 31 at 4, citing Doc. 12 at 25-27.) Petitioner argues in that claim that his "conviction was obtained as the result of evidence that is insufficient to persuade a properly instructed, reasonable jury of his guilt beyond a reasonable doubt," and lists examples of inculpatory physical and biological evidence that was absent from trial. (Doc. 12 at 25.) This claim fails to satisfy the actual innocence standard under *Schlup*. To demonstrate actual innocence under *Schlup*, a petitioner must "show actual, factual innocence, not just legal insufficiency of the evidence." *United States v. Ratigan*, 351 F.3d 957, 965 (9th Cir. 2003). Petitioner does not present any new evidence to support his claim of innocence. To the extent that Petitioner presented "newly discovered evidence" in state post-conviction relief proceedings (*see supra*, p. 5), the Superior Court specifically found Petitioner's evidence was not new because it had either been previously presented at trial or was known by the defense at the time of trial. (*See* Doc. 20-2 at 158.) While Petitioner contends "manifest injustice would occur" (Doc. 31 at 4) as a basis to excuse the untimeliness of his petition, he has not proffered any evidence or argument of actual innocence, and thus has not presented new evidence that justifies review of his time-barred claims under this exception.

## CONCLUSION

In sum, Petitioner did not file his federal habeas petition until October 18, 2012, approximately six months after the limitations period expired on April 29, 2012. Therefore, the Court finds that the amended petition is barred by the statute of limitations, and will recommend that it be denied and dismissed with prejudice. Accordingly,

**IT IS RECOMMENDED** that the First Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 12) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and

leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 28th day of January, 2014.

Honorable Steven P. Logan
United States Magistrate Judge

21